# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### July 20, 2010 Session

## STATE OF TENNESSEE v. DAVID HENRY HAMMON

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2007-D-3306     J. Randall Wyatt, Jr., Judge**

**No. M2009-00723-CCA-R3-CD - Filed September 2, 2010**

The defendant, David Henry Hammon, was convicted by a Davidson County jury of domestic assault and child abuse, both Class A misdemeanors, and was sentenced by the trial court to an effective term of eleven months, twenty-nine days to be served on supervised probation. On appeal, he argues that the trial court erred by denying his request for judicial diversion without considering and weighing all the appropriate factors. Following our review,[1] we affirm the trial court's denial of judicial diversion but remand for the entry of corrected judgments to reflect that the defendant was sentenced to concurrent terms of eleven months, twenty-nine days for the child abuse conviction and six months for the domestic assault conviction as stated in the trial court's sentencing order.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed and Remanded for Entry of Corrected Judgments**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Doug Thurman (on appeal) and Ed Ryan (at trial), Nashville, Tennessee, for the appellant,

---

[1]A portion of the trial transcript containing the defendant's direct and cross-examination testimony is missing from the record. The record reflects that defense counsel was forced to file four separate motions for an extension of time to file the transcript of the evidence, all of which were necessitated by the official court reporter's failure to complete the trial transcript in a timely manner. After the transcript was finally filed, defense counsel discovered that it was incomplete, as a portion of the defendant's direct examination testimony, along with all of his cross-examination testimony, was missing. Defense counsel, therefore, filed another motion requesting that the record be supplemented with the missing testimony and that he be allowed additional time to complete his brief. The court reporter then submitted a supplemental transcript that was almost identical to the transcript previously submitted, with the same portion of the defendant's trial testimony omitted. We have, however, determined that the missing portion of the trial transcript is not necessary for our review of this issue.

David Henry Hammon.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Amy Eisenbeck, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On November 20, 2007, the defendant was indicted by the Davidson County Grand Jury for one count of domestic assault and two counts of child abuse based on his physical assault of his ex-wife, Kathy Hammon, and their two minor children, twelve-year-old Kali[2] Hammon and ten-year-old Jacob Hammon, during a May 12, 2007, confrontation at his home. Six witnesses testified at trial: Kathy Hammon, Kali Hammon, Jacob Hammon, the detective with the Metro Police Department's Domestic Violence Division who responded to the scene and took photographs of the victims' injuries, a neighbor of the defendant's who witnessed the culmination of the confrontation, and the defendant.

At trial, the State presented proof to show that Kathy Hammon, who had been divorced from the defendant for years and living with their children in West Virginia, had recently moved with the children back to the defendant's Nashville home in an attempt to reconcile the family. However, when it became clear that things were not going to work out, she began to look for another place for her and the children to live. The defendant learned of her plans and on the morning of May 12, 2007, had her served with a restraining order that prohibited her from removing the children from his home. Kali was particularly upset about the restraining order and angrily confronted the defendant about it when he came home later that morning. He grabbed her arm, and Kathy Hammon called police officers to the home, who took no action other than to request that the defendant leave for a period of time and to stop him from taking Jacob's guitar with him as he left.

Later that same day, the defendant returned to the home and again attempted to remove Jacob's guitar. Kathy Hammon told him to stop and reached for the guitar, and the defendant punched her underneath her eye. She instructed the children to call the police and reached for the guitar again, and the defendant again punched her with his closed fist, this time striking her in the mouth. The struggle continued in the living room with Kathy

_____

[2] We note that this child's name is spelled in the transcripts, variously, as "Aali," "Alie," and "Callie." We have chosen to use "Kali," which is how the name is spelled in both the indictment and the trial court's written sentencing order.

Hammon and the children trying to block the defendant from reaching the door and the defendant grabbing Kathy Hammon, throwing her on the ground, and hitting her again. At some point when the defendant was on top of Kathy Hammon, Jacob jumped on the defendant's back and the defendant elbowed him in the face, bloodying his nose.

At another point, Kali Hammon retrieved a knife, held it to the defendant's neck, and threatened to cut him if he did not let her mother go. The confrontation then moved outside to the yard as Kali locked herself in the defendant's truck in an attempt to detain him until the police arrived, while Kathy Hammon tried to prevent him from reaching Kali in the truck. During that time, the defendant again threw Kathy Hammon to the ground. Finally, the defendant unlocked the truck with his keys, grabbed Kali by the hair, causing a knot to form on her head, pulled her from the truck, and departed without the guitar.

At the conclusion of the trial, the jury convicted the defendant of the domestic assault count of the indictment and the child abuse count against Kali Hammon, but acquitted him of the count charging him with the child abuse of Jacob Hammon. At the sentencing hearing, Kathy Hammon testified that the defendant was controlling, manipulative, and verbally abusive to both her and their children from the time she and the children moved back in with him. She also said that she had witnessed him being both verbally and physically abusive to his mother during that time. She stated that she had sought counseling through Father Breen of Saint Edwards Catholic Church and had attempted to get the defendant to join her, but he refused. Finally, she said that she did not necessarily want the defendant to spend any time in jail, but she did want him to be forced to undergo counseling.

Father Joseph Breen, the pastor of Saint Edwards Catholic Church, testified on the defendant's behalf that he had known the defendant for approximately four years and considered him to be an honest and responsible person. He said that he had encouraged the defendant and Kathy Hammon, both of whom were "good, decent people," to get counseling and found it sad that they had not been able to work together. He stated that he did not think the defendant would do anything to intentionally harm his ex-wife or his children and did not believe he should be incarcerated. He thought, however, that counseling would be beneficial to all the parties involved.

Melissa Queen testified that she had known the defendant since she was sixteen and had been married to him from 2000 to 2006. She described the defendant as a man who was "rough around the edges" and at times emotionally distant but said he "never laid a hand" on her. She also said that the defendant was extremely hardworking and devoted to his children and his elderly mother.

Tom McWatters, a friend and former supervisor of the defendant's, testified that the defendant was "extremely conscientious" and "one of the hardest working" men he had ever known. In addition, he had observed that the defendant was a proud and devoted father and a dedicated and caring son. He described the defendant as "a tough man," who was "old school," but said that he had never seen him have a confrontation with anybody during the time he had known him.

The defendant testified that he began working in the air conditioning industry after his graduation from high school and had spent close to thirteen years in the Army Reserve. He recounted his history of steady employment at various air conditioning companies, which began in 1976, was interrupted by his seven-month deployment in the Gulf War, and resumed in 1993 when he returned from the Gulf and was hired by Trane. He said he remained with Trane until 2002 and then started his own business.

The defendant testified that he invited Kathy Hammon and their children to move back in with him at his Nashville home because their living conditions in West Virginia were deplorable and the children had missed a lot of school. He said that he and Ms. Hammon disagreed on the issue of discipline but that he was never abusive to the children. He also denied that he was abusive to his mother and said that adult protective services had conducted an investigation and found no basis for the allegations. He stated that he had talked with Father Breen during the time that he and Ms. Hammon were attempting their reconciliation and, at his advice, had contacted Catholic Charities to arrange counseling. He was, however, unable to arrange a time that would accommodate his busy schedule, which included twelve- to sixteen-hour work days and the children's athletic events.

The defendant testified that he accepted the jury's verdict, although he believed that he would not have been convicted had the police conducted a thorough investigation. He also expressed his willingness to comply with the trial court's orders and his desire to move on with his life. On cross-examination, he testified that he believed his children had been coached to lie in their trial testimony. He declined to accept responsibility for the injuries to his ex-wife and daughter, testifying that he believed that Kathy Hammon had intentionally scratched herself to create her own injuries and insisting that he did not jerk or throw Kali from the truck. Finally, he said that the jury had been presented with only a very small picture of the encounter and that he was the actual victim of the physical confrontation that took place at his home.

Upon further questioning by the trial court, Kathy Hammon testified that she had an order of protection against the defendant and that she and the children were currently living in LaVergne.

-4-

At a follow-up sentencing hearing held approximately one month later, defense counsel announced that he had a letter from Kenneth Baker of Behavioral Treatment Providers, who had evaluated the defendant and recommended that he continue his psychological counseling with Dr. Wilson; a letter from Dr. Wilson stating that the defendant was continuing his treatment; and a list indicating that the defendant had completed twelve of the recommended eighteen to twenty-six treatment sessions. When offered a chance to express her view, Kathy Hammon testified that her children, who had been emotionally damaged by the incident and had undergone counseling, wanted the defendant to be held accountable for his crimes and not to have his record expunged. She, therefore, requested that the trial court deny the defendant's request for judicial diversion.

On March 2, 2009, the trial court entered a detailed written order in which it sentenced the defendant to concurrent terms of eleven months, twenty-nine days for the child abuse conviction and six months for the domestic assault conviction, to be served on supervised probation. The court denied the defendant's request for judicial diversion, concluding that judicial diversion was not in the best interests of either the defendant or the public. Thereafter, the defendant filed a timely notice of appeal to this court in which he challenges the trial court's denial of his request for judicial diversion.

## ANALYSIS

On appeal, the defendant argues that the trial court abused its discretion in denying his request for judicial diversion by not considering all of the appropriate factors and by assigning too much weight to the circumstances of the offense. The State disagrees, arguing that the trial court properly denied the request for diversion after carefully considering, weighing, and making findings with respect to all the relevant factors. We agree with the State.

Following a determination of guilt by plea or by trial, a trial court may, in its discretion, defer further proceedings and place a qualified defendant on probation without entering a judgment of guilt. Tenn. Code Ann. § 40-35-313(a)(1)(A) (Supp. 2009). A qualified defendant is one who is found guilty or pleads guilty or nolo contendere to the offense for which deferral of further proceedings is sought, is not seeking deferral of further proceedings for a sexual offense, a violation of section 71-6-117 or section 71-6-119, or a Class A or Class B felony, and who has not been previously convicted of a felony or a Class A misdemeanor. Id. § 40-35-313(a)(1)(B)(i). If the defendant successfully completes the period of probation, the trial court is required to dismiss the proceedings against him, and the defendant may have the records of the proceedings expunged. Id. § 40-35-313(a)(2), (b).

It is undisputed that the defendant met the qualifications for judicial diversion. However, as the trial court noted in its order, the decision to grant or deny a qualified defendant judicial diversion lies within the sound discretion of the trial court. State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); State v. Cutshaw, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997); State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993). As such, it will not be disturbed on appeal absent an abuse of discretion. Electroplating, 990 S.W.2d at 229; Cutshaw, 967 S.W.2d at 344; Bonestel, 871 S.W.2d at 168. To constitute an abuse of discretion, the record must be devoid of any substantial evidence in support of the trial court's decision. Cutshaw, 967 S.W.2d at 344; Bonestel, 871 S.W.2d at 168; State v. Anderson, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992).

In determining whether to grant diversion, the trial court must consider all of the following factors: (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, (f) the deterrence value to the accused as well as others, and (g) whether judicial diversion will serve the interests of the public as well as the accused. Electroplating, 990 S.W.2d at 229; Bonestel, 871 S.W.2d at 168. A trial court should not deny judicial diversion without explaining the factors in support of its denial and how those factors outweigh other factors in favor of diversion. Id.

The trial court went through each of the above factors before concluding that diversion was not appropriate in this case. With respect to the first factor, the court began by finding that the defendant had "a questionable amenability to correction." The court noted that the defendant had complied with the order of protection, reported as required to his probation officer, and begun counseling to address his anger management issues. The court further noted, however, that the defendant had never demonstrated any strong remorse for his actions and that the jury had, by its verdict, concluded that his "old school" behavior had crossed the line between strict discipline and abuse. We agree with the State that it is implicit in the trial court's ruling that it weighed this factor against the granting of diversion.

With respect to the second factor, the trial court found that the circumstances of the offenses demonstrated a "concerning violent character on the part of the [d]efendant toward the members of his family." The court went on to note that the defendant's intentional physical blows against his family were dramatic enough to motivate both the defendant's children to attempt to intervene to protect their mother and to stall the defendant until the arrival of the police. Although the trial court did not specifically state that it was weighing this factor against the granting of diversion, it is implicit in its ruling that it did so.

With respect to the third factor, the trial court found that the defendant had no criminal record and commended him for his "apparent regard of the law." Thus, it is clear that the

-6-

trial court weighed this factor in favor of the granting of diversion.

With respect to the fourth factor, the trial court found that the defendant's social history contained both positive and negative aspects, noting that he was apparently held in high regard by his peers, but that his "old school" personality had led him to his current situation. Thus, it appears that the trial court found that this factor weighed neither for nor against diversion.

With respect to the fifth factor, the trial court found that the defendant's physical health was good, but he lacked emotional maturity about how to respect the rights of his family members. Although not stated, it appears that the trial court weighed this factor against diversion.

With respect to the sixth factor, the trial court found that granting the defendant diversion would not act as an effective deterrent in preventing him or others from engaging in similar acts in the future. The trial court, therefore, clearly weighed this factor against the granting of diversion.

Finally, the trial court concluded that it would not serve the ends of justice to grant the defendant's request for judicial diversion. In reaching this conclusion, the trial court again noted the positive testimony of the defendant's character witnesses, as well as the defendant's history of military service and deployment to Iraq. The court further noted, however, that the defendant's actions would have a lasting and damaging emotional effect on his children and that it "could not turn a blind eye toward the results of the [d]efendant[']s actions." The trial court concluded its ruling as follows:

> Based on the evidence submitted at trial and during the sentencing hearing, the Court is of the opinion that it is not in the interests of justice to permit the [d]efendant to complete judicial diversion and eventually expunge these offenses from his record. The Court finds that a jury of twelve of the [d]efendant's peers convicted him of two violent offenses against his family members and the Court finds that a record of these offenses should remain intact to ensure that the nature and effect of these offenses are not forgotten by the [d]efendant, the victims, or by the members of society at large.

The record supports the findings of the trial court. Although the defendant had no criminal record, evidenced a history of steady employment and military service, and had complied with the orders of the court regarding the order of protection and obtaining counseling, these factors were outweighed by the violent nature of the offenses he committed against his family members, his emotional immaturity in dealing with his family, his failure

to demonstrate any genuine remorse for his actions, and the fact that he continued to accuse his children, even at the sentencing hearing, of lying in their trial testimony. We conclude, therefore, that the trial court did not abuse its discretion in denying the defendant's request for judicial diversion.

## **CONCLUSION**

Based on the foregoing authorities and reasoning, we affirm the order of the trial court denying the defendant's request for judicial diversion. We remand the case, however, for the entry of corrected judgment forms to reflect that the defendant's eleven-month-twenty-nine-day sentence was for child abuse and his six-month sentence was for domestic assault.

_____
ALAN E. GLENN, JUDGE